**S & M ENTERPRISES, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 561–88C.

United States Court of Federal Claims.

Jan. 29, 1999.

Reissued for Publication March 15, 1999.

James G. Greilsheimer, New York City, for plaintiff. Lawrence S. Feld, Tenzer Greenblatt LLP, of counsel.

Harold D. Lester, Jr., Washington, D.C., with whom were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director, Civil Division, Department of Justice, Washington, D.C. Karren Dickson Vance, U.S. Postal Service, of counsel.

ORDER

HARKINS, Senior Judge.

Plaintiff's claim presents the issue of whether the former New York State Tax on Gains Derived from Certain Real Property Transfers (NYS transfer gains tax)[1] is a "transfer tax" or a "similar expense" within the meaning of the Uniform Relocation Assistance and Real Property Acquisition Policies Act (Policies Act).[2] Defendant acquired by eminent domain on June 29, 1987, plaintiff's property in New York City, which was used as a mail distribution center called the Murray Hill Postal Center.[3] The case is before the court on cross motions for summary judgment. All briefing has been completed and no material fact is in dispute. Oral argument is not necessary.

1. N.Y. Tax Law Art. 31–B §§ 1440, *et seq.*, *repealed by*, effective July 13, 1996, New York Laws of 1996, ch. 309, § 171 (McKinney 1987 & Supp. 1997).

2. 42 U.S.C. § 4653(1) (1994).

3. *United States v. 17,380 Square Feet of Land. Etc.*, 87 Civ. 4635 (S.D.N.Y.) (July 26, 1993).

*Procedural Status*

Proceedings have been extended and complex. The initial complaint, filed September 23, 1988, sought a declaratory judgment; defendant filed a motion to dismiss pursuant to RUSCC 12(b)(1) and (h)(3) on November 22, 1988; plaintiff filed a cross motion for summary judgment on January 23, 1989; briefing on the motions was completed on March 10, 1989.

The case was reassigned to this judge on October 2, 1989. After oral argument on the motions, the order filed November 29, 1989, noted that facts relevant to the motions had changed during the briefing period. Although at the time the complaint was filed declaratory relief on the claim was not available in this court, and the court lacked subject matter jurisdiction because the New York State Department of Taxation and Finance (NYS Taxation Department) had not determined any amount of tax due under the NYS transfer gains tax, this defect was cured by the NYS Taxation Department by its November 30, 1988, determination of tax due in the amount of $958,627.30, and by the December 2, 1988, payment of that amount by plaintiff.

The November 29, 1989, order declared the court had jurisdiction of the subject matter under RUSCC 12(b)(1) and converted defendant's motion to dismiss to a motion for summary judgment pursuant to RUSCC 12(b)(4). The order also (1) authorized the parties to file additional memoranda on the cross motions for summary judgment; (2) authorized plaintiff to amend its complaint to reflect the then present factual posture; and (3) in order to avoid piecemeal resolution of plaintiff's claim, deferred decision on the cross motions for summary judgment until there was a final amount claimed for reimbursement.

The first amended complaint was filed on December 14, 1989. It recited that the NYS transfer gains tax had been calculated on defendant's deposit of $15,300,000 in the condemnation proceeding, that plaintiff had paid the $958,627.30 assessed on December 2, 1988, and asserted a right to reimbursement pursuant to the Policies Act, Postal Service regulations, and the just compensation clause of the Fifth Amendment.

During the period November 29, 1989, to June 15, 1990, plaintiff's request for reconsideration of the November 29, 1989, order relative to piecemeal resolution of plaintiff's claim, and plaintiff's motion for certification of an interlocutory appeal were briefed and considered. During this period there had been no final determination of the amount plaintiff was required to pay under the NYS transfer gains tax or the amount of plaintiff's claim for reimbursement under the Policies Act. By order dated April 23, 1990, plaintiff's motion for reconsideration of the November 29, 1989, order was denied; by order dated June 15, 1990, plaintiff's motion for certification of an interlocutory appeal was denied.

Proceedings on the cross motions for summary judgment continued to be deferred. On August 25, 1993, plaintiff's status report advised that the condemnation action in the district court in the Southern District of New York, after trial on April 19–22, 1993, had been settled by a consent judgment filed on July 29, 1993. The consent judgment ordered that just compensation for the condemnation was $22,373,051.00. The consent judgment noted that the Government had deposited $15,300,000.00 estimated compensation, which had been paid out pursuant to orders dated August 25, 1987, and February 26, 1988. The Government was ordered to pay an additional $7,073,051.00 to plaintiff condemnee.

On August 24, 1993, plaintiff notified the NYS Taxation Department of the additional payment it had received in the condemnation action. Plaintiff's October 17, 1994, status report noted that no decision had been reached in the NYS administrative proceedings on the NYS transfer gains tax, with the result that plaintiff did not know the full amount of its claim in this case.

Plaintiff's February 15, 1995, status report noted that the NYS Taxation Department on November 25, 1994, had determined that plaintiff was liable to pay an additional $470,000.00, with interest of $435,791.44, for a total of $905,791.44, under the NYS transfer gains tax. Plaintiff advised that it had decided to challenge this determination and had

taken the initial administrative step of filing a request for a conciliation conference with the NYS Taxation Department. Plaintiff advised that, if necessary, it intended to seek judicial relief after exhaustion of its administrative remedies. Plaintiff suggested status reports at six month intervals. This suggestion was accepted by order filed March 7, 1995.

Plaintiff's August 4, 1995, status report stated plaintiff was awaiting notice from the NYS Taxation Department as to the date on which the conciliation conference would be held, and requested direction as to when it should submit its next status report. By order dated August 9, 1995, plaintiff was directed to file a status report at six month intervals until completion of all administrative or legal challenges of the determination of liability for NYS transfer gains tax.

Plaintiff's February 9, 1996, status report stated the conciliation conference in the NYS administrative proceeding had been concluded on October 30, 1995. The conciliation conference was unsuccessful and the conciliation process was concluded by order dated January 5, 1996. Plaintiff stated it would seek further administrative review and would file a petition with the NYS Division of Tax Appeals for a redetermination by an administrative law judge of the assessment made by the NYS Taxation Department. Should that decision be adverse to plaintiff, plaintiff (but not the NYS Taxation Department) could seek judicial review in the NYS Supreme Court.

During the period February 15, 1995, to January 13, 1998, plaintiff submitted status reports at six month intervals. The January 13, 1998, status report stated the dispute in the administrative proceeding had been resolved on October 30, 1997, on terms conceded in part by plaintiff. The ruling by the administrative law judge provided that plaintiff was liable for an additional $96,350.00 in transfer gains tax, with interest from the June 29, 1987, date of taking to the date of payment. Plaintiff had conceded liability as to the additional $96,350.00. The NYS Taxation Department advised plaintiff it would accept the ruling and would not appeal to the NYS Division of Tax Appeals. Plaintiff also

decided not to appeal to the Tax Appeals Tribunal, and on November 26, 1997, paid the sum of $243,986.34, consisting of $96,350.00 in additional tax and $147,636.34 in interest.

On January 22, 1998, a schedule was established by order (1) for additional briefing to supplement papers applicable to the November 29, 1989, cross motions for summary judgment, (2) for plaintiff to file a motion to amend the complaint, and (3) for briefing thereon. By order dated April 3, 1998, plaintiff's motion to file an amended complaint to update the amount of its claim to reflect the final amount paid, and to assert a.new claim based on the theory of an implied-in-fact contract, was allowed.

The Second Amended Complaint was filed April 17, 1998. Briefing on the cross motions for summary judgment was completed on May 27, 1998.

*Material Facts*

1. Plaintiff S & M purchased on August 4, 1982, in fee simple absolute, the property located at 207–213 East 36th Street New York, New York, including the buildings and improvements erected thereon (the Property). Plaintiff owned the Property immediately prior to the condemnation on June 29, 1987.

2. Since at least 1972 the United States Postal Service had leased the Property, including the five-story 103,424 square-foot building thereon, for use as a mail distribution center called the Murray Hill Postal Center.

3. On June 29, 1987, defendant United States acquired the Property through eminent domain by filing a Declaration of Taking in the United States District Court for the Southern District of New York. On the date of the taking, defendant deposited $15.3 million as estimated just compensation for the condemnation of the Property. This amount was paid to the condemnee pursuant to orders dated August 25, 1987, and February 26, 1988. In further proceedings, S & M and the government stipulated, and on July 29, 1993, the District Court adopted, that just compensation for the taking was $22,373,051.00, inclusive of interest. Plaintiff has

been paid the additional $7,073,051.00 pursuant to the July 29, 1993, order.

4. The New York State Department of Taxation and Finance assessed S & M $958,627.30 under the NYS transfer gains tax. Plaintiff paid that sum on December 2, 1988. On the basis of the final award in the condemnation proceeding, the NYS Department of Taxation and Finance assessed an additional transfer gains tax of $470,000.00, with interest of $435,791.44 from the date of the taking, June 29, 1987. In further administrative proceedings, the NYS transfer gains tax liability was established to be an additional $96,350.00, with interest from the date of taking to the date of payment. On November 26, 1997, plaintiff paid New York State $243,986.34, consisting of $96,350.00 in additional tax and $147,636.34 in interest thereon.

5. Plaintiff's initial complaint was filed on September 23, 1988, and a first amended complaint was filed on December 14, 1989. The Second Amended Complaint, filed on April 17, 1998, supplements and supercedes the initial and first amended complaints.

6. Plaintiff's claim in this court is for reimbursement of the total payments pursuant to the NYS transfer gains tax of $1,202,613.64 ($958,627.30 on December 2, 1988, and $243,986.34 on November 26, 1997), together with interest from the dates plaintiff made these respective payments. Plaintiff's claim for reimbursement for its payments pursuant to the NYS transfer gains tax is based on the Policies Act,[4] Postal Service regulations,[5] and the just compensation clause of the Fifth Amendment to the United States Constitution.[6] In addition plaintiff seeks reimbursement for attorney fees, fees of expert witnesses, and related expenses incurred in connection with the New York State tax matter in the amount of approximately $310,000.00 for benefit conferred to defendant under a contract implied-in-fact.

4. 42 U.S.C. § 4653(1) (1994).

5. 39 C.F.R. § 777.33(a)(1), (b) (1987).

6. "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

## DISPOSITION

Plaintiff's primary claim is that it is entitled to reimbursement under the Policies Act for the amounts paid to New York State pursuant to the NYS transfer gains tax. If there is no entitlement to reimbursement, there can be no Fifth Amendment taking, nor any indemnity for breach of an alleged implied-in-fact contract.

Disposition of plaintiff's claims has been complicated because the initial complaint was filed prematurely, with the result that this case essentially has been stayed during the period November 29, 1989, to January 22, 1998, to permit the completion of litigation needed to resolve the condemnation amount for the Murray Hill property and to resolve the administrative dispute with the NYS Tax Department regarding the final amount of the NYS transfer gains tax. During this period, S & M supplemented its information and made additional arguments as to the basis and extent of its claim. Further, S & M changed positions it had advanced in materials filed previously.

The initial complaint was filed before plaintiff had been assessed any amount for the NYS transfer gains tax; it sought declaratory relief not available in this court. The first amended complaint cured these defects by seeking (1) reimbursement for the sum of $958,627.30 paid on the basis of defendant's deposit of $15.3 million in the condemnation proceeding, (2) remand to the Postal Service with direction to pay directly to the NYS Tax Department any additional NYS transfer gains tax, and (3) reimbursement for a Fifth Amendment taking. The second amended complaint increases the amounts to be reimbursed and adds a claim for reimbursement under a contract implied-in-fact for attorney fees, fees of expert witnesses, and related expenses in the NYS administrative proceedings.[7]

7. Similarly, S & M's January 23, 1989, memorandum of law, p. 21, and its March 10, 1989, reply memorandum, p. 7, argued the Vermont land gains tax was comparable to be NYS transfer gains tax, and IRS Rev. Ruling 80–121, 1980–1 C.B. 43 that the Vermont tax should be followed because it was a transfer tax rather than a Federal capital gains tax or income tax under

The nearly ten year stay period, in part, is attributable to the inability of the parties to isolate by stipulation the issues of law applicable to construction of the Policies Act, and the issues of law applicable to construction of the NYS transfer gains tax.[8] Inability to stipulate as to applicable issues of law was complicated by S & M's continued assertions of its intent to resolve contested factual determinations by further administrative and legal appeals.

### Reimbursement—Policies Act

Summary judgment under RCFC 56(c) shall be rendered forthwith "if the pleadings, depositions, answers and interrogatories, and admissions on file, together will the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." The nonmoving party, under RCFC 56(f), by affidavits or as otherwise provided in the rule "must set forth specific facts showing there is a genuine issue for trial."

Summary disposition is appropriate to isolate and dispose of factually unsupported claims or defenses and there are no genuine disputes as to any material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987). The movant has the burden of demonstrating that there are no genuine issues of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). After adequate time for discovery and on motion, the movant can meet this burden by establishing that there is an absence of evidence on an essential element of the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed.Cir.1987). The fact that there are cross-motions for summary judgment does not mean the court must grant judgment as a matter of law for one side or the other. Each party's motion must be evaluated on its own merits. All reasonable inferences must be drawn against the party whose motion is under consideration. *Mingus Constructors, Inc.*, 812 F.2d at 1391. The non-movant must respond by producing affirmative evidence that a genuine issue of material fact does exist, and such an issue is determined to be genuine if a reasonable jury could resolve a factual matter in the non-movant's favor. *Sweats Fashions, Inc.*, 833 F.2d at 1562. Doubts as to whether there are material factual issues in dispute are to be resolved in the light most favorable to the party opposing the motion for summary judgment. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "In order to defeat a motion for summary judgment, the non-moving party must demonstrate more than some metaphysical doubt as to the material facts, instead it must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In this case, there has been more than adequate time for discovery. There are no

I.R.C. § 164(a). After *Collins v. United States*, 946 F.2d 864 (Fed.Cir.1991) affirmed the judgment of this court that the Policies Act did not require reimbursement of the Vermont gains tax, however, S & M argued that the Federal Circuit relied on "two features of the Vermont statutory scheme that materially differ from the NYS transfer gains tax." Plaintiff's March 25, 1998, supplemental brief, p. 6; *see also*, defendant's May 6, 1998, response, pp. 17–19.

Another example is found in the Second Amended complaint. The proposed draft, attached to the February 17, 1998, motion to amend, did not include in the second claim (¶¶ 23–27) an allegation that defendant's acceptance and retention of the benefit of a reduction in its obligation to reimburse constitutes a ratification giving rise to an implied promise to pay. After defendant's March 12, 1998, response to the motion to amend, however, S & M in its March 30, 1998, reply, p. 7 n.1, stated: "The allegations set forth in this paragraph are not contained in the proposed pleading annexed to plaintiff's motion papers. If the motion is granted, plaintiff will include these allegations in the amended complaint it serves."

The "ratification" allegation is contained in ¶ 27 of the Second Amended complaint.

8. *See* papers related to the April 23, 1990, order denying S & M's motion for reconsideration of piecemeal resolution of its claim; and papers related to the June 15, 1990, order denying S & M's motion for certification of an interlocutory appeal.

facts in dispute that are material to defendant's motion for partial summary judgment.

*Statutory Provisions*

The statutory provision in the Policies Act[9] that requires the Government to reimburse a property owner whose property has been taken pursuant to the Government's eminent domain powers for "transfer taxes" that the condemnee has been required to pay states:

The head of a Federal agency, as soon as practicable after the date of payment of the purchase price or the date of deposit in court of funds to satisfy the award of compensation in a condemnation proceeding to acquire real property, whichever is the earlier, shall reimburse the owner, to the extent the head of such agency deems fair and reasonable, for expenses he necessarily incurred for—

(1) recording fees, transfer taxes, and similar expenses incidental to conveying such real property to the United States.

The United States Postal Service, had issued its own regulations[10] to implement the Policies Act:

(a) *Reimbursement.* When property is acquired through the exercise or the threat of the exercise of eminent domain, the owner shall be reimbursed for all reasonable expenses he or she necessarily incurred in conveying the real property to the Postal Service for:

(1) Recording fees, transfer taxes, documentary stamps, evidence of title, boundary surveys, legal descriptions of the real property, and similar incidental expenses. However, the Postal Service will not pay costs solely required to perfect the owner's title to the real property....

(b) *Direct Payment.* Whenever feasible the Postal Service must pay these costs directly and thus avoid the need for an owner to pay such costs and then seek reimbursement from the Postal Service.

S & M asserts that Article 31–B of the NYS Tax Law, entitled "Tax Gains Derived From Certain Real Property Transfers" constitutes a transfer tax reimbursable under the Policies Act and Postal Service regulations. The NYS transfer gains tax, in relevant sections, provides:

**§ 1440. Definitions**

1. (a) "Consideration" means the price paid or required to be paid for real property or any interest therein, less any customary brokerage fees related to the transfer if paid by the transferor, including payment for an option or contract to purchase or use real property....

3. "Gain" means the difference between the consideration for the transfer of real property and the original purchase price of such property, where the consideration exceeds the original purchase price.

7. (a) "Transfer of real property" means the transfer of any interest in real property by any method, including but not limited to sale, exchange, assignment, surrender, mortgage foreclosure, transfer in lieu of foreclosure, option, trust indenture, taking by eminent domain, conveyance upon liquidation or by a receiver, or transfer or acquisition of a controlling interest in any entity with an interest in real property....

**§ 1441. Imposition of tax**

1. A tax is hereby imposed on gains derived from the transfer of real property within the state. The tax shall be at the rate of ten percent of the gain.

**§ 1442. Payment of tax**

(a) General. The tax imposed by this article shall be paid by the person liable for the tax to the commissioner of taxation and finance, or to any agent of such commissioner appointed pursuant to [§ 1449(b)] of this article, no later than the fifteenth day after the date of transfer. Any payment of this tax subsequent to [March 28, 1983,] and prior to [July 1, 1989,] and made no later than the fifteenth day after the date of transfer shall be deemed to have been paid on the date of transfer....

**§ 1443. Exemptions**

---

9.  42 U.S.C. § 4653(1) (1994).

10.  39 C.F.R. § 777.33(a), (b) (1987).

A total or partial exemption shall be allowed in the following cases:

1. If the consideration is less than one million dollars; provided, however, for the purpose of the application of this exemption only, consideration shall be deemed to also include....

### § 1447. Filings and procedures

1. (f)(1) A county clerk or register of a county shall not record or accept for record any conveyance, other than a conveyance by a court of appropriate jurisdiction, or an officer thereof, resulting from an action to foreclose a mortgage, of real property in New York state ... unless accompanied by:

> (i) the statement of tentative assessment of the amount of tax or statement that no tax is due provided pursuant to subdivision two of this section, together with the payment of the tentative assessment of the amount of tax, if any.... [11]

Separate from the NYS transfer gains tax, New York State has a real estate transfer tax.[12] On June 29, 1987, Article 31, Section 1401 provided in relevant part:

> A tax is hereby imposed on each deed at the time it is delivered by a grantor to a grantee when the consideration or value of the interest conveyed exceeds one hundred dollars....

In 1989, L.1989, c. 61, § 182 amended Article 31. Section 1402, as amended, provided in relevant part:

**Imposition of Tax**

A tax is hereby imposed on each conveyance of real property or interest therein when the consideration exceeds five hundred dollars, at the rate of two dollars for each five hundred dollars or fractional part thereof; provided, however, that with respect to (A) a conveyance of a one, two or three-family house and an individual residential condominium unit, or interests therein; and (B) conveyances where the consideration is less than five hundred thousand dollars, the consideration for the interest conveyed shall exclude the value of any lien or encumbrance remaining thereon at the time of conveyance.[13]

Payment of the transfer tax imposed by Article 31 is required prior to deed recordation, and the tax is paid through the purchase of documentary stamps or through the use of a metering machine. Section 1403, Payment of Tax, provides:

**Payment of Tax**

(a) The real estate transfer tax shall be paid either by the purchase of adhesive documentary stamps from the tax commission or any person designated as its agent for purposes of this article, or through the use of metering machines by the tax commission and such agents. In addition to or in lieu of the foregoing methods, the tax commission, by regulation, may prescribe any other method for payment of the tax, as long as such method includes a procedure under which payment of the tax is noted on the deed or if no tax is due, such a notation is placed on the deed. The tax commission shall have power and is hereby authorized to provide by regulation which of such methods shall be used and may authorize the use of one or more of such methods.

(b) Documentary stamps shall be affixed to the deed and canceled before the deed is recorded. Documentary stamps shall be canceled by the person affixing them to the deed, writing or stamping on each stamp his initials and the date on which the stamps are affixed.

(c) If the tax is paid through the use of a metering machine or by any other method which the tax commission, by regulation, may provide, the tax shall be paid before the deed is recorded. The tax commission shall have power and is authorized to provide by regulation the manner in which the tax imposed by this article shall be paid through the use of metering machines.

---

**11.** N.Y. TAX LAW, ART. 31–B, § 1447(1)(f)(1)(i) (McKinney 1987).

**12.** N.Y. REAL PROP. TAX LAW, ART. 31, §§ 1400–1410 (McKinney Supp.1983–84).

**13.** N.Y. REAL PROP. TAX LAW § 1402(a) (McKinney 1994).

(d) A recording officer shall not record a deed unless the real estate transfer tax shall have been paid as provided in this section.[14]

*Scope*

The Policies Act provides for uniform acquisition procedures when a federal agency condemns real property. This requires interpretation of the scope of the statutory language that requires the Government to reimburse the owner for transfer taxes and similar expenses incidental to conveying real property to the United States, and analysis of agency regulations that implement the Act. Neither the Policies Act nor the Post Office regulations expressly include a gains tax in the list of reimbursable expenses. The Court of Appeals for the Federal Circuit in *Collins*,[15] reviewed the legislative history of the Policies Act and found "no indication of the intended scope of 42 U.S.C. § 4653(1)." 946 F.2d at 867.[16] The Federal Circuit concluded:

> Finally, the fact that the enacted statute categorically enumerates various reimbursable expenses, rather than providing for consequential losses or an accounting for damages, creates a presumption that Congress intended to limit reimbursement to the listed categories.

946 F.2d at 868.

*Collins* involved the Vermont Land Gains Tax. The Federal Circuit concluded that the enumerated category in the Policy Act for reimbursement describes, and is limited to, a set of expenses that are customarily and necessarily paid "in order to complete the [legal] transaction" of property title transfer or to perfect the recording of the new deed. As a result, the Vermont Land Gains Tax was found to be neither a transfer tax nor a similar expense because the tax bears no relationship to the acts of completing legal title transfer or recording the new deed, and, additionally, because Vermont expressly made the tax a continuing personal liability

of the seller after the transfer of title had been effected. 946 F.2d at 869.

S & M describes various features of the NYS transfer gains tax to evidence its similarity to a transfer tax. S & M argues that the NYS transfer gains tax is a transfer tax because a deed would not be recorded until the tax was paid, and because both the buyer and seller was liable for the tax.

S & M states that, prior to 1989, the transferor of property was primarily liable for the NYS transfer gains tax, with the transferee only "secondarily liable for the [tax] if [the transferee] failed to withhold the tax from the sums paid to the transferor as consideration for the transfer." However, S & M asserts that, in 1989, subparagraphs 8 and 9 of section 1440 of the NYS transfer gains tax were added "to impose primary liability for the tax on the transferee as well as the transferor," making it more like a transfer tax.

S & M has misstated the scope of the transferee's potential liability for the tax. S & M's analysis of the scope of the 1989 amendments to Article 31–B is flawed. Under section 1447(3) of the NYS transfer gains tax, the transferee is never liable for the gains tax, except in very limited circumstances arising (1) when the transferor and transferee "fail to give such pertinent affidavits and other information to the [NYS Taxation Department] as required by this section," or (2) after the NYS Taxation Department notifies the transferee that a tentative assessment of the gains tax exists and, despite this knowledge, the transferee subsequently transfers sums of money to the transferor. N.Y. TAX LAW § 1447(3)(a) (McKinney 1987). As a result, the transferee was never primarily liable for the unpaid tax, absent the circumstances identified in the statute.

The transferee's limited potential liability for the unpaid tax did not change in 1989. Although subparagraphs 8 and 9 were added

---

14. N.Y. REAL PROP. TAX LAW § 1403 (McKinney Supp.1983–84).

15. *Collins v. United States*, 946 F.2d 864 (Fed. Cir.1991).

16. The legislative history and the text of the Federal Aid Highway Act of 1968, which was repealed by the Policies Act, on which the Policies Act provision on reimbursement for transfer taxes was modeled, did not provide assistance. 946 F.2d at 867 n. 4.

to section 1440 in 1989, those paragraphs did not in any way expand the transferee's liability. The 1989 amendment simply added the term "person liable for the tax," and defined it as meaning a person who is personally liable for the tax whether as a transferor or as a transferee pursuant to paragraph (a) of subdivision three of Article 31–B, section 1447. The 1989 amendment did not amend section 1447(3). Instead, section 1447(3) continued to provide for transferee liability only in those limited circumstances described above. S & M's attempt to make the law appear to place equal liability upon the transferor and the transferee is incorrect.

S & M distinguishes the Vermont and New York gains taxes by arguing section 1447(1)(f)(1)(i) of the NYS transfer gains tax prohibits the recording of a deed until the gains tax is paid and liability for the tax is imposed on both the buyer and seller. The Court of Appeals of New York has interpreted the NYS transfer gains tax payment provision to be distinct from the traditional NYS transfer tax provision, which requires payment of the actual tax before recording.[17] The distinction being that the NYS transfer gains tax requires the payment of the tentative amount of the tax at the time of recordation, and the NYS transfer tax requires the payment of the actual amount of the tax prior to recordation. Furthermore, the NYS transfer gains tax, unlike the transfer tax, can be paid in installments in certain circumstances. N.Y. TAX LAW § 1442(c).

In *Heller*, the Court of Appeals of New York found that a comparison of the NYS transfer gains tax with the NYS transfer tax strongly evidenced that the NYS transfer gains tax was not a transfer tax.

The tax on gains derived from real property transfers is "imposed on gains derived from the transfer of real property within the state ... [and is imposed] at the rate of ten percent of the gain" (Tax Law § 1441). The real estate transfer tax in

Tax Law § 1402, on the other hand, bears a direct relationship to the consideration paid for the property, and is "imposed on each conveyance of real property or interest therein when the consideration exceeds five hundred dollars, at the rate of two dollars for each five hundred dollars or fractional part thereof." Thus, the real property transfer gains tax bears little similarity to a real estate transfer tax.

595 N.Y.S.2d 731, 611 N.E.2d at 771–72.

The Policies Act creates a presumption that Congress intended to limit reimbursement to the listed categories. If the NYS transfer gains tax is more like an income tax than a transfer tax, then, arguably, Congress intended to exclude it from reimbursement. A transfer tax is a "tax imposed by states on each deed conveying real estate. The tax is paid by the seller." BLACK'S LAW DICTIONARY 1498 (6th ed.1990). An income tax is "a tax on a person's income, wages, salary, commissions, emoluments, profits and the like, or the excess thereof over a certain amount." *Id.* at 764.

One court has ruled on whether the NYS transfer gains tax is more like an income tax under the Policies Act.[18] *National R.R. Passenger* found the NYS transfer gains tax was more like an income tax because the gains tax is not assessed on the total value of the property, but rather, on the difference between the consideration received and the cost.[19] Traditional transfer taxes are assessed on the value of the property. In excluding the NYS transfer gains tax from reimbursement, the court determined that the tax was contingent on the profitability of the property transfer, unlike traditional transfer taxes which are contingent on transferability of the property.

Other courts have noted the distinction between the rate of assessment on typical transfer taxes and the NYS transfer gains

---

17. *Heller v. State of New York*, 81 N.Y.2d 60, 595 N.Y.S.2d 731, 611 N.E.2d 770 (1993).

18. *National R.R. Passenger Corp. v. 10,178 Sq. Feet of Land*, 789 F.Supp. 142, 143 (S.D.N.Y. 1992).

19. The district court relied on *In re 995 Fifth Ave. Assoc., L.P. v. New York State Dep't of Taxation and Finance*, 963 F.2d 503 (2d Cir.1992), *cert. denied*, 506 U.S. 947, 113 S.Ct. 395, 121 L.Ed.2d 302 (1992) (which held the NYS transfer gains tax was not a stamp or similar tax within the bankruptcy code).

tax. *995 Fifth Ave.*, 963 F.2d at 513; *Heller*, 81 N.Y.2d 60, 595 N.Y.S.2d 731, 611 N.E.2d 770 (1993). The NYS transfer gains tax rate is ten percent of the profit. The transfer tax rate is two dollars for every five hundred dollars of consideration or value. Assuming property that cost $500,000 is sold for $1,000,000, the transfer tax due is $4,000 and the transfer gains tax due is $50,000. The significant difference in the two tax rates demonstrates that the NYS transfer gains tax is more like an income tax than a transfer tax which traditionally is assessed at "about one percent or less of the consideration." *995 Fifth Ave.*, 963 F.2d at 513. S & M notes that New York City imposes a transfer tax of 2.65 percent for transfers over $500,000. The New York City transfer tax is not claimed by S & M as a transfer tax or similar expense and properly is not a factor in a comparison with the NYS transfer gains tax.

*Similar Expense*

S & M claims that, even if the NYS transfer gains tax is not a transfer tax, it is a "similar expense" that is "incidental to" the transfer. S & M reads the phrase "and similar expenses" in a vacuum. It argues that similar expenses should be read to mean any expenses incurred by the seller in the conveyance of its property to the Government. The term "similar expenses" clearly refers directly to expenses similar to the enumerated ones. If Congress had intended to compensate property owners for all of their expenses, including the transfer gains tax at issue here, the regulation and statute would have so specified. Instead, both the Policies Act and the Postal Service implementing regulation clearly and directly aim to compensate the transferors only for those expenses incidental to the transfer.

The Policies Act does not reimburse the transferor for all expenses incurred in the sale or transfer of real property. Instead, the various reimbursable expenses are limited to those that the Policies Act categorically enumerates. The Postal Service's implementing regulation expressly limits recoverable costs to a specific listing of items eligible for reimbursement. The Postal Service regulations are consistent with the standards recommended by the Department of Transportation for use under the Policies Act.

A "similar expense" must be "incidental to" the transfer. The term "incidental" means "having reference to something which is subordinate to and dependent upon and follows the existence of another and principal thing," or "depending upon or appertaining to something else as primary."[20] The NYS transfer gains tax is not "incidental to" the transfer of the property, but instead is, at best, "incidental to" a realized capital gain. The gains tax is not an expense of conveyance, but a tax on the realization of an increase in the value of the capital asset.

The basic characteristics of the NYS transfer gains tax are consistent with an income tax. Because Congress excluded acquisition income tax consequences from the list of reimbursable expenses, the NYS transfer gains tax is not a transfer tax or similar expense.

**Other Claims**

In the Second Amended Complaint, S & M acknowledged that the implied-in-fact contract claim is contingent upon a showing that the Government had an obligation to pay the NYS transfer gains tax. Similarly, if there is no showing of entitlement to reimbursement of the payments made to the NYS Taxation Department, there is no entitlement to just compensation for a Fifth Amendment taking as alleged in the Second Amended Complaint, ¶ 8. Because the NYS transfer gains tax is not a transfer tax or similar expense under the Policies act, S & M is unable to demonstrate that the payments it made to the NYS Taxation Department were the obligations of the Government.

On the basis of review of the complete record and the foregoing analysis, defendant is entitled to judgment,

IT IS ORDERED:

**20.** *Stark v. Brannan*, 82 F.Supp. 614, 618 (D.D.C. 1949), *aff'd*, 185 F.2d 871 (D.C.Cir.1950), *aff'd*, 342 U.S. 451, 72 S.Ct. 433, 96 L.Ed. 497 (1952).

1. Defendant's motion for summary judgment is allowed.

2. Plaintiff's motion for summary judgment is denied.

3. The Clerk is directed to enter judgment for defendant and dismiss the complaint.

4. Costs to defendant.