**S & M ENTERPRISES,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 99–5061.**

United States Court of Appeals,
Federal Circuit.

Dec. 28, 1999.

James G. Greilsheimer, Tenzer Greenblatt LLP, of New York, New York, argued for plaintiff-appellant.

Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were David W. Ogden, Acting Assistant Attorney General and David M. Cohen, Director. Of counsel on the brief was Lori J. Dym, Attorney, United States Postal Service, of Washington, DC.

Before MICHEL, SCHALL, and BRYSON, Circuit Judges.

MICHEL, Circuit Judge.

This is an appeal from the January 29, 1999 decision of the United States Court of Federal Claims granting summary judgment in favor of the government. *See S & M Enters. v. United States,* 43 Fed.Cl. 210 (1999). Plaintiff–Appellant S & M Enterprises ("S & M") was the owner of the property located at 207–213 East 36th Street, New York, New York ("the Property"). On June 29, 1987, the United States acquired the Property through eminent domain by filing a Declaration of Taking in the United States District Court for the Southern District of New York. The New York State Department of Taxation and Finance assessed a transfer gains tax on S & M. S & M filed a claim for reimbursement under the Uniform Relocation Assistance and Real Property Acquisition Policies Act ("Policies Act"), 42 U.S.C. § 4653(1) (1994), claiming that this tax was a "transfer tax or similar expense." The

Court of Federal Claims found that this tax was an income tax and not a transfer tax or similar expense, and, therefore denied S & M's claim for reimbursement. Because we agree that a tax based on gains is not a transfer tax or similar expense, we *affirm.*

## BACKGROUND

This case was initially filed in the Court of Federal Claims on September 23, 1988, however, due to a long and complicated procedural history, which is detailed in the Court of Federal Claims decision, no judgment was issued until January 29, 1999. *See S & M,* 43 Fed.Cl. at 210–20. The case was timely appealed to our court and submitted for our decision following oral argument on December 8, 1999.

The only issue currently before this court is whether the transfer gains tax assessed against S & M[1] after its property was acquired by the government can be classified as a "transfer tax or similar ex-

---

1. S & M was taxed under Article 31–B of the New York State Tax Law, entitled "Tax Gains Derived From Certain Real Property Transfers." In relevant sections, it provides:

   § 1440 Definitions
   1. (a)"Consideration" means the price paid or required to be paid for real property or any interest therein, less any customary brokerage fees related to the transfer if paid by the transferor, including payment for an option or contract to purchase or use real property.
   . . . .
   3. "Gain" means the difference between the consideration for the transfer of real property and the original purchase price of such property, where the consideration exceeds the original purchase price.
   . . . .
   7. (a)"Transfer of real property" means the transfer of any interest in real property by any method, including but not limited to sale, exchange, assignment, surrender, mortgage foreclosure, transfer in lieu of foreclosure, option, trust indenture, taking by eminent domain, conveyance upon liquidation or by a receiver, or transfer or acquisition of a controlling interest in any entity with an interest in real property.
   § 1441. Imposition of tax

1. A tax is hereby imposed on gains derived from the transfer of real property within the state. The tax shall be at the rate of ten percent of the gain.
   § 1442. Payment of tax
   (a) General. The tax imposed by this article shall be paid by the person liable for the tax to the commissioner of taxation and finance, or to any agent of such commissioner appointed pursuant to [§ 1449(b) ] of this article, no later than the fifteenth day after the date of transfer. Any payment of this tax subsequent to [March 28, 1983,] and prior to [July 1, 1989,] and made no later than the fifteenth day after the date of transfer shall be deemed to have been paid on the date of transfer. . . .
   § 1447. Filings and procedures.
   1. (f)(1) A county clerk or register of a county shall not record or accept for record any conveyance, other than a conveyance by a court of appropriate jurisdiction, or an officer thereof, resulting from an action to foreclose a mortgage, or real property in New York state . . . unless accompanied by:
      (i) the statement of tentative assessment of the amount of tax or statement that no tax is due provided pursuant to subdivision two of this section, together with the payment of the tentative assessment of the amount of tax, if any. . . .

pense" within the meaning of the Policies Act. Under the Policies Act, the government is required to reimburse a property owner whose property has been taken pursuant to the government's eminent domain powers for "expenses he necessarily incurred for ... recording fees, transfer taxes, and similar expenses incidental to conveying such real property to the United States." 42 U.S.C. § 4653(1).

## ANALYSIS

The Federal Circuit has examined a similar issue once before in a case involving the Vermont Land Gains Tax. *See Collins v. United States*, 946 F.2d 864 (Fed.Cir. 1991). That case interpreted the language "transfer taxes, and similar expenses" as used in 42 U.S.C. § 4653 to be limited to the "set of expenses that are customarily and necessarily paid 'in order to complete the [legal] transaction' of property title transfer or to perfect the recording of the new deed." *Id.* at 869 (quoting 35 Fed. Reg. 19232, 19243 (1970)). In that case, this court held that the Vermont Land Gains Tax bore no relationship to the acts of completing legal title transfer or recording the new deed, and therefore it was neither a transfer tax nor a similar expense. The court thoroughly expounded on the minimal legislative history available to reach the conclusion that the Policies Act did not cover the Vermont Land Gains Tax, stating that "the traditional nature of a locality's property transfer taxes [renders them] ... generally due at settlement or before the property transfer transaction can be given legal effect." *Id.* We held that since the "title transfer is recorded regardless of payment" of the Vermont Land Gains Tax, which is distinguishable from Vermont's Property Transfer Tax due at "the time of delivery to the clerk for recording of a deed evidencing a transfer of title to property subject to the tax," the Vermont Land Gains Tax cannot be considered a transfer tax, or similar expense "because the tax bears no relationship to

the acts of completing legal title transfer or recording of the new deed." *Id.*

■ In the instant case, New York State, as Vermont did in the *Collins* case, implemented a real estate tax "on each deed at the time it is delivered by a grantor to a grantee when the consideration or value of the interest conveyed exceeds one hundred dollars...." N.Y. Real Prop. Tax Law, Art. 31, §§ 1400–1410 (McKinney Supp.1983–84). In 1989, Article 31 was amended. Section 1402, as amended, provided in relevant part:

A tax is hereby imposed on each conveyance of real property or interest therein when the consideration exceeds five hundred dollars, at the rate of two dollars for each five hundred dollars or fractional part thereof; provided, however, that with respect to (A) a conveyance of a one, two or three-family house and an individual residential condominium unit, or interests therein; and (B) conveyances where the consideration is less than five hundred thousand dollars, the consideration for the interest conveyed shall exclude the value of any lien or encumbrance remaining thereon at the time of conveyance.

N.Y. Real Prop. Tax Law § 1402(a) (McKinney 1994). Payment of the transfer tax imposed by Article 31 is required prior to deed recordation, and the tax is paid through the purchase of documentary stamps or through the use of a metering machine. The real estate tax is a tax designed merely to cover the costs of the actual transfer, including the costs of recording the deed, and other administrative tasks the government must do to perfect the transfer. The New York State transfer gains tax is a separate tax designed to raise revenue, not to merely offset expenses, and is taxed at the rate of ten percent on the gains earned on the transfer. We held in *Collins* that the policy behind the Policies Act was to reimburse unwilling conveyors of their property only for those expenses "incidental to conveying such real property to the United States"—

not with the profits they may earn from the transfer. It is clear that in the instant case, the New York State transfer gains tax is not merely a fee to cover such incidental costs, and is therefore, not meant to be reimbursed under the Policies Act.

■ S & M argues that the fact that the tax is on the gains is only one factor to be considered in determining whether the tax is a "transfer tax, or similar expense." We disagree, and hold that regardless of the many different factors that may come into play, such as when the tax is due, or who is responsible for the tax, if the tax is based solely on the *gain*, if any, and not on the *size* of the transfer, it is never a "transfer tax,. or similar expense" and, therefore, never reimbursable under the Policies Act. In a case, such as this one, where if there had been a loss incurred in the transfer no New York transfer gains tax would have been due, the tax is solely against the gain, and not against the conveyance, the tax cannot be a "transfer tax, or similar expense." It is, instead, merely a tax on the gain, and therefore, not reimbursable.

It does not matter, in the instant case, that section 1447(1)(f)(1)(i) of the New York State transfer gains tax prohibits the recording of the deed until the gains tax, if due, is paid, that liability for the tax can, in certain limited circumstances, be imposed on both the seller and the buyer, and that the tax is imposed simultaneously with the *transfer*. The dispositive factor is that the tax is assessed against any profit earned, and not assessed against the size of the conveyance made.

## CONCLUSION

The summary judgment in favor of the government, holding that S & M is not entitled to reimbursement for the amount assessed under the New York State Transfer Tax and paid by S & M, is therefore,

*AFFIRMED.*